IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 08-20464

DISTRICT JUDGE JULIAN ABELE COOK
v.                               MAGISTRATE JUDGE STEVEN D. PEPE

AGGREY COOPER,

    Defendant.

_____/

**REPORT AND RECOMMENDATION DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DKT. #11)**

Defendant Cooper is charged in a four-count Indictment alleging Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g), Possession with Intent to Distribute Cocaine, in violation of § 841(a)(1), Possession with Intent to Distribute Cocaine Base, in violation of § 841(a)(1) and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 21 U.S.C. § 924(c).

On December 16, 2008, Defendant moved this Court, pursuant to Fed. R. Crim. P. 12(b)(3) and 41(f), to enter an order suppressing all evidence seized at the residence at ***** Auburn, Detroit, Michigan, pursuant to a search warrant issued April 7, 2008. This motion was referred for Report and Recommendation pursuant to 28 U.S.C. 636 (b)(1)(B) (Dkt. #17). A hearing was held on Defendant's motion on February 6, 2009, at which time all unresolved issues were heard. For the reasons stated on the record and indicated below, **IT IS RECOMMENDED** that Defendant's motion be **DENIED**.

**I.     BACKGROUND**

On April 7, 2008, Detroit Police officer Kristopher Richardson presented an application for a search warrant to a Wayne County District Court magistrate.  Based on information obtained from a confidential informant – circumstantially verified as credible by DPO Richardson's observations including controlled buys of narcotics by the CI from Defendant on March 11 and April 4 – Magistrate Robert Costello issued a warrant authorizing the search of ***** Auburn, Detroit, Michigan.  On April 8, 2008, Detroit police officers executed the state search warrant for Defendant's house in Detroit.  Detroit police officers recovered, among other things, eight firearms, powder cocaine, crack cocaine, marijuana, a digital scale and $1,115 cash.  Defendant's wife was present at the house when the officers arrived.  She waived her *Miranda* rights and made a voluntary statement that Defendant sells cocaine from their home, that he had been doing so for three years, and that the weapons belonged to him. When Defendant returned home and spoke with police, he too waived his *Miranda* rights and admitted that he sells cocaine from their home, that he had been doing so for two years, and that the weapons were his.  Defendant has a prior felony record.

Defendant was given the opportunity to cooperate, but he failed to respond.  No state charges were brought.  Rather, five months later he was charged in a four-count federal indictment alleging felon in possession of a firearm, possession of cocaine with intent to distribute, possession of cocaine base with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime.  Defendant was arrested without incident on October 29, 2008.  He again waived his *Miranda* rights and met with law enforcement in a videotaped session lasting approximately 70 minutes.  He again admitted to selling cocaine and possessing the firearms.

Defendant now alleges that Officer Richardson's warrant affidavit failed to set forth facts

2

establishing a sufficient nexus between the place to be searched and the items to be seized and was devoid of any attestation as to the reliability or credibility of the confidential informant upon which the information in the affidavit relies. Because the warrant affidavit allegedly failed to establish probable cause to believe that the contraband or evidence of a crime would be found at ***** Auburn, Detroit, Michigan, Defendant contends the search conducted pursuant to the warrant violated his Fourth Amendment right to remain free from search and seizure without probable cause. Moreover, given the alleged deficiencies in the search warrant affidavit, Defendant contends that Officer Richardson's reliance on the warrant was not objectively reasonable and cannot be considered in good faith or objectively reasonable. As such, Defendant argues that the *Leon*[1] exception to the exclusionary rule cannot be applied to this case.

## II.   ANALYSIS

### A.   Legal Standard

"Probable cause arises if there are 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). "[I]n order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Search warrant affidavits must be judged based on the totality of the circumstances,

---

[1] *United States v. Leon*, 468 U.S. 897 (1984)

rather than line-by-line scrutiny.  *See Coffee*, 434 F.3d at 892; *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).  In this regard, affidavits for search warrants:

> Must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965); *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) ("Courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner.").

A magistrate judge's determination of probable cause should be paid great deference by a reviewing court. *Coffee*, 434 F.3d at 892; *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).  Thus, "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Id.*

### B.     Factual Analysis

Defendant essentially argues that Magistrate Castello did not have a substantial basis for finding that there was probable cause to believe that evidence of Defendant Cooper's drug trafficking would be found at XXXXX Auburn (*See, e.g.*, Dkt. #11, p. 7 ) ("Officer Richardson's affidavit fails to set forth any information sufficiently linking drug activity to ***** Auburn.").  The following sworn facts, however, establish the nexus between Defendant's drug dealing and his residence at XXXXX Auburn:

- the CI informed Officer Richardson that an individual who drives a vehicle bearing a certain license plate number was a mid level crack dealer in the area of Freeland and Plymouth Rd. (Dkt. #18, Ex. A, p. 3, ¶1)

- the license plate number the CI provided was for a blue 1992 Cadillac STS, registered to defendant Cooper at XXXXX Auburn2 (Dkt. #18, p. 1; p. 3, ¶1)

- Officer Richardson showed the CI a photo of Defendant Cooper; the CI confirmed

that he was the person the CI had referenced (Dkt. #18, Ex. A, p. 3, ¶1)

• police observed Defendant Cooper's Cadillac STS parked at XXXXX Auburn on March 11 (Dkt. #18, Ex. A, p. 4, ¶2)

• Officer Richardson arranged with the CI and other Detroit police officers for a controlled buy from the defendant on March 11 (*id.*)

• Officer Richardson observed defendant Cooper leaving XXXXX Auburn in his Cadillac STS on March 11 just prior to the first controlled buy (*id.*)

• Officer Richardson observed defendant Cooper travel directly from XXXXX Auburn to the meet spot in his Cadillac STS on March 11 (*id.*)

• Defendant Cooper sold crack cocaine to the CI on March 11 (*id.*)

• Officer Richardson arranged with the CI and other Detroit police officers for a controlled buy from the defendant on April 4 (Dkt. #18, Ex. A, p. 4, ¶3)

• Officer M. Bryant observed Defendant's Cadillac STS parked at XXXXX Auburn on April 4 while Officer Richardson went with the CI to the pre-arranged meet spot, (*id.*)

• Officer Bryant observed Defendant Cooper leaving XXXXX Auburn in his Cadillac STS on April 4 just prior to another controlled buy (*id.*)

• Officer Bryant observed Defendant Cooper travel directly from XXXXX Auburn to the meet spot in his Cadillac STS on April 4 (*id.*)

• Defendant Cooper sold crack cocaine to the CI on April 4 (*id.*).

In sum, on both March 11 and April 4, the Cadillac STS registered to Defendant Cooper at XXXXX Auburn was seen parked at XXXXX Auburn and was driven by Defendant when he went directly from XXXXX Auburn to the meet spot to sell crack cocaine to the CI. Defense counsel argues that the affidavit supporting the warrant does not clearly indicate that Officer Richardson actually observed the March 11 and April 4 buys. Yet, the affidavit indicates that Officer Richardson coordinated with the CI and other Detroit police officers to conduct a controlled buy. Knowing the standard operating procedures of such controlled buys and the surveillance protocols police officers routinely utilize, a magistrate could reasonably read the

affidavit of Officer Richardson as indicating: (i.) Officer Richardson observed the Defendant leave the target residence and observed him proceeding to the meet spot on March 11, and further observed him make the controlled buy by the CI, without Officer Richardson needing to repeat that he "observed" the actual buy at the meet spot which he describes[2]; and similarly ( ii.) Officer Bryant observed the Defendant leave the target residence on April 4, and further observed him driving directly to the meet spot where Officer Richardson and the CI had earlier arrived, and Officer Richardson observed the CI he accompanied to the meet spot complete the buy transaction from the Defendant on April 4. While controlled buy transactions inside a building are often not observed by the officers coordinating the controlled buy, when the meet spot is outside in the public, it is reasonable to assume that the coordinating law enforcement officer if he is at the meet spot seeks to observe the actual buy both for the evidentiary purpose such observations serve as well as for security purposes for the CI were anything to go awry during the buy itself. The AUSA at the hearing in this case also confirmed that this was the case in her discussions with Officer Richardson, that he observed both controlled buys. This confirmation indicates that Officer Richardson also thought his affidavit concerning two controlled buys was sufficient to indicate that he observed both of the buys. Reading the search warrant in a "commonsense" and "realistic fashion," as required by *Ventresca* and *Greene*, it is reasonable to assume both March 11 and April 4 buys were observed.

Under these circumstances observed by Officers Richardson and Bryant on March 11 and April 4, there is reasonable grounds to believe that there would be evidence of Defendant

---

[2] The affidavit states"[t]he target met with the CI on the street and conducted the transaction." Although this sentence does not repeat the word "observed," it can reasonably be assumed that the transaction was also observed given the order of the sentences in paragraph 2 and because the affidavit clearly states that the target was observed driving directly to the prearranged meet spot.

Cooper's drug dealing at his residence at XXXXX Auburn, and probable cause to search that residence. *See United States v. Jones*, 105 Fed. Appx. 327, 333 (6th Cir. 2006) ("Furthermore, and more importantly, the affidavit included details of two controlled drug buys between the CI and Jones that were arranged by the police, before at least one of which (on June 14, 2002) the police observed Jones leaving directly from 3288 Niagara, and during both of which the police noted that Jones drove a vehicle that was described by the CI and that they had seen parked at 3288 Niagara.").

Accordingly, the warrant is supported by sufficient probable cause.[3]

### III. RECOMMENDATION

It is therefore **RECOMMENDED** that Defendant's motion to suppress be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

---

[3] Defendant also argues that the search warrant is deficient because the controlled buys did not take place at XXXXX Auburn (*See* Dkt. #11, p. 7 ) ("The affidavit does not refer to any activity indicating that narcotics transactions were taking place at the 'target location.'") As discussed above, Defendant Cooper was seen leaving XXXXX Auburn immediately before the two controlled buys. But even so, the Sixth Circuit has decided several cases upholding search warrants for the homes of known drug dealers based on the logical premise that incriminating evidence is likely to be found at the residences of drug dealers when there is probable cause to believe that an individual is a drug trafficker. *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (upholding search of residence based on probable cause that the defendant was involved in the manufacture of a controlled substance in another location); *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (collecting cases); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000) ("'[i]n the case of drug dealers, evidence is likely to be found where the dealers live'") (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)).

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: February 23, 2009                           s/Steven D. Pepe
Ann Arbor, Michigan                               United States Magistrate Judge


Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 23, 2009 .

                                                  s/Jermaine Creary
                                                  Deputy Clerk