UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                          Case No. 08-20464
AGGREY COOPER,                        Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

On September 4, 2008, a federal grand jury returned an indictment which charged the Defendant, Aggrey Cooper, with (1) being a felon in possession of a firearm, (2) possessing with an intent to distribute cocaine, (3) possessing with an intent to distribute a cocaine base, and (4) possessing a firearm in furtherance of a drug trafficking crime, all in violation of 18 U.S.C. §§ 922(g), 841(a)(1), 841(a)(1), and 21 U.S.C. § 924(c), respectively.

On December 16, 2008, Cooper filed a motion to suppress the Government's projected evidence which was referred to Magistrate Judge Steven D. Pepe for a report and recommendation. On February 23, 2009, Magistrate Judge Pepe filed a report in which he recommended that the Court deny Cooper's motion. A timely objection by Cooper followed.

In addition to his request for a suppression of the evidence, Cooper filed several other motions on December 16, 2008; to wit, applications for (1) discovery from the Government, and (2) the production of the confidential informant ("CI"). On January 13, 2009, he submitted an *ex*

1

*parte* motion for the issuance of a subpoena under Fed.R.Crim.P. 17(c). These motions were also referred to Magistrate Judge Pepe who, on February 18th, issued an order which denied Cooper's (1) request for discovery, (2) motion to produce the confidential informant, and (3) *ex parte* request for the issuance of a subpoena under Rule 17(c).[1] In an objection that was filed on March 2nd, Cooper seeks a review of this order. He also filed a motion for a "*Franks*" hearing on February 12th, which, if granted, would suppress the challenged evidence that had been garnered by the law enforcement officers during their search of his dwelling.[2] The Government filed a response in opposition on April 1st, to which Cooper replied one week later.

The Court will address and rule on these various motions seriatim.

I.

On April 7, 2008, Detroit Police officer Kristopher Richardson presented an application and an affidavit to Wayne County District Court Magistrate Robert Costello, seeking to obtain authority to obtain a search warrant. Magistrate Costello, acting upon the information within Richardson's proffered application and affidavit, issued the requested search warrant which authorized law enforcement officials to conduct the search of a dwelling on Auburn Street in Detroit. According to Richardson's affidavit, a confidential informant ("CI") told him that an individual who was generally known in the community as a mid level crack cocaine dealer, was seen driving a Cadillac STS automobile (identified as "vehicle 1" in the affidavit) in the area of Freeland Street and Plymouth Road in Detroit. Acting upon this information, Richardson was able to glean that the

---

[1] Magistrate Judge Pepe also granted Cooper's request to strike the Government's response to his *ex parte* motion for a Rule 17(c) subpoena after ruling that a non-moving party is not entitled to file a response. This ruling has not been challenged by either party.

[2] *See Franks v Delaware,* 438 U.S. 154 (1976).

license plate number, which had been assigned to this motor vehicle, was registered to Cooper at an address on Auburn Street in Detroit. Richardson also averred that the CI had identified a photograph of Cooper as being the man whom he had identified as a "mid level crack cocaine dealer." Moreover, Richardson advised Magistrate Costello that Cooper had a criminal record which included three prior convictions for drug possession and at least two weapons violations since 1986.

Richardson also informed Magistrate Costello that he had arranged controlled drug buys with the CI and Cooper on March 11th and April 4, 2008. On these two days, Cooper was allegedly observed leaving his home on Auburn street in an automobile and thereafter traveling directly to the location where the controlled buy was scheduled to occur. According to Richardson, Cooper sold a narcotic substance to the CI that was subsequently confirmed to be cocaine. Richardson also informed Magistrate Costello that he had prepared two Detroit Police Department Activity Logs for these controlled buys.[3]

During their search of the Auburn dwelling, Detroit police officers recovered, among other things, powder cocaine, crack cocaine, marijuana, eight firearms, a digital scale, and $1,115 in cash. Cooper's wife, who was present during the search, waived her *Miranda*[4] rights, and, thereafter, told police officers that (1) her husband had been selling cocaine from their home for three years, and

---

[3] These Activity Logs read, in pertinent part:

March 11: "Plymouth/Evergreen in the area on Buy/Walk with surveillance. CI 2282 purchased ½ oz of crack cocaine placed on LSF#N00188108"

April 4: "[Location redacted] meet w/SOI on purchase. Target called deal set standing by. Deal good drugs conveyed to narcotics placed on LSF#N00407008"

[4] *Miranda v Arizona,* 384 U.S. 436 (1966).

(2) he was the owner of the seized weapons. Cooper later arrived at the home, and, while therein, waived his *Miranda* rights. According to Richardson, Cooper acknowledged to the arresting Detroit police officers that he (1) had been selling cocaine from the home for two years and (2) was the owner of the seized firearms.

Cooper was arrested on October 29, 2008, after a federal grand jury indicted him on the charges, to which reference has been made hereinabove. He waived his *Miranda* rights once again and engaged in a seventy minute interview with law enforcement officers during which Cooper allegedly admitted to his sale of cocaine and ownership of the weapons that were removed from the Auburn dwelling under the auspices of a search warrant.

II.

In his motion, Cooper contends that Richardson's affidavit is legally deficient, in that he has failed to establish (1) a sufficient nexus between the place to be searched and the items to be seized and (2) the reliability or the credibility of the CI. Furthermore, he argues that the exception to the exclusionary rule as pronounced in *Leon*[5] is not applicable in this case because Richardson's reliance on the warrant was neither proffered in good faith nor objectively reasonable.

The Fourth Amendment of the Unites States Constitution provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause arises if there are 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting

---

[5]In *United States v. Leon*, the Supreme Court held that "evidence obtained based on an objectively reasonable reliance on a subsequently invalidated search warrant" is not subject to the exclusionary rule. 468 U.S. 897, 922 (1984).

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

When attempting to determine if probable cause exists, this Court must turn to the following "totality of the circumstances" approach that was adopted twenty five years ago by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238 (1984) (citing *Jones v. United States*, 362 U.S. 257, 271(1960)) :

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.

The Sixth Circuit Court of Appeals ("Sixth Circuit")has encouraged a reviewing court to examine an affidavit in a "commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). A magistrate judge's decision should be accorded great deference and reversed only if it was rendered arbitrarily. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Notwithstanding, a reviewing court "must still insist that the magistrate perform his neutral and detached function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964) (citations omitted).

Cooper's first objection to the report pertains to Magistrate Judge Pepe's conclusion that the CI was "circumstantially verified as credible" by Richardson. The Sixth Circuit has opined that "[w]hile independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (internal citations omitted). In some instances, courts have found sufficient probable cause to issue a warrant where police officers had set up controlled buys with

the confidential informants. *See, e.g.*, *United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (officer's corroboration of events during controlled buy provided probable cause); *Coffee*, 434 F.3d at 894 (probable cause existed where confidential informant's base of knowledge was his purchase of drugs from defendant and purchase was controlled and observed by police officer).

It is Cooper's contention that Richardson's affidavit, which ostensibly described the controlled buy, does not provide sufficient corroboration of the CI's credibility. In making this argument, he asserts that Richardson "did not directly observe the buys, but relied on [the CI] to convey what occurred during the buy and the identification of the seller." However, Magistrate Pepe had a different view point, opining that his commonsense reading of the warrant led him to a reasonable conclusion that the controlled buys had been observed by a law enforcement officer.

The Court does not find Cooper's argument to be persuasive. Richardson stated in his affidavit that Cooper "was observed to leave the target location [on March 11th] enter vehicle 1and drive directly to the pre [arranged] meet spot. The target [Cooper] met with the CI on the street and conducted the transaction." Magistrate Judge Pepe reasoned that, although the second sentence in Richardson's affidavit does not contain the word "observed," it can be inferred from the previous statement that the police officer watched Cooper as he left his home in an automobile for the pre-determined meeting locale and, thereby, conducted the transaction with the CI.[6] This commonsense reading leads the Court to the conclusion that the magistrate did not act arbitrarily in determining that there was a sufficient corroboration to establish the reliability of the CI.

---

[6] With respect to the buy on April 4th, Richardson stated in his affidavit that a fellow officer "Bryant advised [him] that the target was observed to exit the target location and enter into vehicle 1. [] Bryant conducted surveillance of the target that was driving vehicle 1 and the same went directly to the meet spot. The target met with the CI and took custody of the quantity of suspected crack cocaine."

Cooper also maintains that the magistrate judge incorrectly concluded that there was a sufficient factual predicate in Richardson's affidavit upon which to establish the existence of probable cause that the Auburn home contained evidence of criminal activity. For the reasons that have been discussed earlier, the Court disagrees with Cooper's assessment and, in so doing, concludes that the magistrate did have a substantial basis upon which to conclude that the proffered affidavit contained a probable to justify the authorization of a search of the Auburn home.

Two years ago, the Sixth Circuit upheld an order which authorized the issuance of search warrants for those residences of known drug dealers based on "the inference that a drug dealer keeps evidence of wrongdoing in his residence . . . if . . . the affidavit had the independently corroborated fact that the defendants were known drug dealers[.]" *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007); *see also United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002) (it is reasonable to assume that drug dealers keep evidence in their residences); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000) (common for drug traffickers to store financial information at their homes). Here, Cooper had been (1) observed by law enforcement personnel in an apparent sale of narcotics to the CI and (2) previously convicted of a drug offense. Thus, having independent corroboration that Cooper had been a drug dealer, Richardson's affidavit established a sufficient nexus between the Auburn residence and criminal activity.

Cooper also objects to Magistrate Judge Pepe's conclusion that it is reasonable for him to assume that Richardson had observed the controlled buys. However, Richardson's affidavit has set forth a sufficiency of facts for this magistrate judge to find probable cause. According to Richardson, law enforcement officers observed Cooper (1) leaving the Auburn residence to enter the vehicle that had been identified by the CI and subsequently driving to the arranged location

7

where the illicit transaction took place, and (2) returning to the Auburn residence after selling the narcotics to the CI. Thus, even considering Richardson's choice of language in the affidavit (i.e., not explicitly stating that he had "observed" the CI purchase the illicit drugs from Cooper), a "commonsense" and realistic reading of the affidavit leads to the conclusion that this law enforcement officer observed the controlled buys. Under these circumstances, there was a substantial basis on which the magistrate could conclude that there would be substantial evidence of criminal activity at the Auburn dwelling.

Accordingly, for the reasons stated above, the Court adopts Magistrate Judge Pepe's report and in so doing, denies Cooper's motion to suppress evidence.

III.

Cooper also challenges an order by Magistrate Judge Pepe who, on February 18, 2009, denied his request for additional discovery after noting that "the United States appears to have fulfilled its discovery obligations thus far, and has indicated it will continue to cooperate in discovery as this case moves forward[.]" (Order Denying Mot. Disc. at 3.) Cooper objects to this conclusion because, in his judgment, the Government has an obligation under Fed. R. Crim. P. 16 which is "broader than production of discovery materials that are simply in [its] possession." (Objection to Report and Rec. at 1.)

In order to assess this challenge by Cooper, the Court turns to Federal Rule of Criminal Procedure 16(a)(1)(E) which reads as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Cooper asserts that "it seems impossible that there are no records, reports or notes" regarding Richardson's encounters with the CI and/or the surveillance that was conducted by him. The record of the hearing on February 6, 2009 reveals that the Government insisted that there were no other notes or relevant materials to produce. Cooper now wants an opportunity to question the police officers about the existence of any other logs, notes, or reports.

Cooper's speculation - without more - as to the existence of other records does not warrant the relief that he seeks to obtain in his motion. However, the Government is under a continuing obligation to proffer any additional items to Cooper in the event that there is a change in the current circumstances. Therefore, the Court affirms Magistrate Judge Pepe's order which denies Cooper's request for discovery.

IV.

Cooper has also filed a motion for an order from this Court that is designed to compel the Government to produce the confidential informant. In his February 18th order, Magistrate Judge Pepe held that Cooper had failed to show how the disclosure of the CI's identity would "substantially assist his defense or is essential to a fair trial." (Order Denying Mot. Disc. at 5.) Cooper, in objecting to this conclusion, maintains that the CI is the Government's primary witness who participated in the controlled buys which, in turn, led to (1) the authorization of the search warrant, (2) his arrest, (3) an environment which ultimately produced the allegedly incriminating statements, and (4) the return of the indictment by a grand jury.

In 1957, the Supreme Court determined that the Government can "withhold from disclosure

9

the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Courts must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *United States v. Moore*, 954 F.2d 379 (6th Cir. 1992). However, a defendant's mere assertion of this right to prepare his defense "does not automatically outweigh the public interest in protecting confidential informants." *Id.* "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Id.*

Here, Cooper has not been charged with having participated in the controlled buys that took place with the CI on March 11th and April 4th in 2008. Thus, Magistrate Judge Pepe correctly noted that Cooper does not have to defend himself against any allegations of criminal wrongdoing by the CI. There is no evidence that the CI (1) was at the Auburn residence when the search warrant was executed and (2) is a witness to any of the alleged criminal acts that have been outlined in the indictment. Cooper, in pointing out that the CI had initially identified him as a suspect and was present during the controlled buys, urges the Court to require the disclosure of his identity to "ensure the constitutionality of the process by which the search warrant and subsequent indictment were obtained." (Objections to Report and Rec. at 3.) However, this contention does not satisfy the threshold showing that is required to outweigh the public interest in protecting confidential informants. Moreover, he has failed to show how this disclosure will assist his defense in this criminal litigation where the controlled buys will not be the subject of the Government's

10

prosecution. The CI's role as a tipster to the police is not a sufficient basis upon which to require the disclosure of his identity. *See United States v. Jackson*, 990 F.2d 251, 255 (6th Cir. 1993) (denial of disclosure where informant was not participant in charged offenses, not at site where defendant was arrested, and no nexus established between defendant and informant regarding charges pertaining to controlled sale of narcotics); *United States v. Sales*, 247 Fed. Appx. 730, 734-35 (6th Cir. 2007) (denial of disclosure where confidential informant was "merely a tipster and not an active participant in the events underlying the defendant's potential liability" (i.e., his possession of drugs and firearms)). Accordingly, the Court affirms Magistrate Judge Pepe's order that denied Cooper's motion to produce the confidential informant.

V.

Cooper has also filed an *ex parte* request for issuance of a subpoena under Fed. R. Crim. P. 17(c). Magistrate Judge Pepe denied this request on February 18, 2009 on the basis of his belief that "the subpoena would produce nothing." Cooper objects to this conclusion and submits that "based on the Detroit Police Department's own manual, it is the policy and practice of the DPD to create and maintain notes, logs, records and reports as part of its investigation." (Objection to Report and Rec. at 3.)

Fed. R. Crim. P. 17(c) reads as follows:

A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Furthermore, the production of documents et al under Rule 17(c) is warranted only where the proponent has established that (1) the requested documents are evidentiary and relevant; (2) the

11

proponent cannot, even with due diligence, procure them; (3) the defendant cannot adequately prepare for trial without obtaining their production in advance; and (4) the request was made in good faith and is not a fishing expedition. *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (citing *United States v. Nixon*, 418 U.S. 683, 699 (1974)). Moreover, the *Nixon* Court emphasized that a Rule 17 subpoena is "not intended to provide a means for discovery for criminal cases." *Nixon*, 418 U.S. at 698 (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)).

In the instant case, Cooper's request is based on his belief that there are more reports other than the two Activity Logs in existence with regard to this investigation by Richardson. However, the Government asserted during the hearing before Magistrate Judge Pepe that Richardson does not possess any other reports or notes relevant to this investigation. Thus, Cooper's motion, which is based entirely on his belief that more reports pertaining to the investigation are in existence, is somewhat akin to a request for discovery.[7] Moreover, Cooper has failed to show that without these purported documents he will be unable to adequately prepare a defense for trial. Therefore, the Court upholds Magistrate Judge Pepe's order which denied Cooper's motion for a subpoena.

VI.

Finally, on February 12, 2009, Cooper filed a motion for a *Franks* hearing and to suppress the Government's evidence. In support of his request, Cooper submits that, inasmuch as the Government has assured Magistrate Judge Pepe that there are no other reports or documents pertinent to the investigation, Richardson acted with reckless disregard for the truth by purposefully

---

[7]Indeed, Cooper asserts in his objections to Magistrate Judge Pepe's order that "[t]he issuance of a Rule 17(c) subpoena will serve to ensure that Defendant Cooper has received all of the existing documents, thereby allowing counsel to adequately prepare a defense on Mr. Cooper's behalf." (Objections to Order Denying Def.'s Mot. for Rule 17(c) Subpoena, 4.)

not disclosing in his affidavit that (1) he acted in contravention of Detroit Police Department policies and (2) the affidavit was based on his memory of the investigation. Cooper also argues that Richardson "omitted the fact that [the drug tests] were preliminary analyses and that he had not obtained laboratory test results showing that the substances actually contained cocaine." (Mot. for *Franks* hearing, at 10.) Cooper submits that these omissions were material to the determination of probable cause by the magistrate judge, and, therefore, he is entitled to a hearing which would allow him to challenge the veracity of Richardson's statements in the affidavit.

In its opposition brief, the Government asserts that Cooper has failed to meet the requisite showing of an entitlement to a *Franks* hearing. The Government submits that, even if Richardson had not prepared the two Activity Logs, "[t]he method in which an affiant documents his investigation simply is not critical for the magistrate to determine whether there is probable cause . . . ." (Response to Mot. for *Franks* hearing at 6.)

The Supreme Court in *Franks* held that a defendant who "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause" is entitled to a hearing to challenge the validity of a search warrant. 438 U.S. 154, 155-56 (1978). If, at the evidentiary hearing, the defendant establishes by a preponderance of the evidence that an allegation in the affidavit is false or was made with a reckless disregard for the truth, then the search warrant must be voided and the fruits of the search must be suppressed. *Id.* at 156.

In order to be entitled to a *Franks* hearing, the defendant "must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with

reckless disregard for the truth." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). A defendant "must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause." *Id.* (emphasis in original). Thus, if the allegedly false statements are excised from the affidavit and there remains enough content in the warrant to establish probable cause, then the defendant is not entitled to a hearing. *Id.* The remaining content in the affidavit establishes probable cause if it "provides the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at the stated location." *Id.* (citations omitted).

Moreover, the Sixth Circuit Court of Appeals has declared that the "deliberate falsehood" and "reckless disregard" standards, as set forth by the Supreme Court in *Franks,* are also applicable to material omissions. *United States v. Kennedy*, 131 F.3d 1371, 1376 (6th Cir. 1997) (citing *United States v. Stewart*, 915 F.2d 572, 582 (1990)). However, "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original).

In the case at bar, Cooper posits that, inasmuch as there is no evidence in the challenged affidavit that Richardson disclosed that he did not complete any additional reports (other than the two Activity Logs) of the investigation, his failure to do so constitutes a substantial showing that this law enforcement officer acted with a reckless disregard for the truth by making a material omission. However, contrary to Cooper's contention, the Government contends that Richardson's failure to make this negative assertion in the affidavit was not critical to the conclusion by the magistrate

14

judge relating to the existence of probable cause. The Court agrees with the Government that the facts - as submitted by Richardson - demonstrate that (1) the CI identified Cooper's car, and (2) Cooper was later observed driving to a pre-arranged location to sell an illicit substance to the CI. Furthermore, Richardson created two reports, both of which pertained to the most critical aspects of the investigation; namely, the controlled buys. Moreover, Cooper has failed to make any showing as to why he believes Richardson acted with an intent to mislead the magistrate judge, as required by *Mays*. Cooper's additional contention that Richardson's failure to note that the drug analyses were not performed in a laboratory warrants a *Franks* hearing is not persuasive. The Government pointed out that the Sixth Circuit in *United States v. Robinson* held that where an affidavit stated that the test was performed by an officer, it "suggest[ed] a field test rather than a laboratory analysis, and supports the district court's finding that the affiant had no intent to mislead the magistrate concerning where the test was conducted." 272 Fed. Appx. 421, 425 (6th Cir. 2007). Similarly, in this case, Richardson stated in the Activity Logs that a police officer tested the substance. There is no proof that he intended to deliberately mislead the magistrate or acted with a reckless disregard for the truth. Such was the case in *Robinson* where the veracity of the other statements in the affidavit pertaining to the results of the analysis (i.e., the substance tested positive for cocaine) were not disputed by the defendant, and the court concluded the Government had provided sufficient probable cause even without reference to the field tests. *See id.*, at 427. Thus, the Court determines that Cooper has failed to make a substantial showing that Richardson deliberately, or with reckless disregard for the truth, omitted statements that were critical for the finding of probable cause by the

magistrate. Thus, he is not entitled to a *Franks* hearing.[8]

## VII.

Accordingly, for the reasons stated above, the Court must, and does, adopt Magistrate Judge Pepe's report which denied Cooper's motion to suppress (Docket Nos. 11, 29). In addition, the Court affirms Magistrate Judge Pepe's order (Docket No. 28) which denied Cooper's motions (1) for discovery (Docket No.10), (2) to produce the confidential informant (Docket No. 12), and (3) for the issuance of a subpoena (*ex parte* document). Finally, the Court denies Cooper's motion for a *Franks* hearing and to suppress the evidence (Docket No. 27).

IT IS SO ORDERED.

Dated: May 14, 2009                           S/Julian Abele Cook, Jr.
       Detroit, Michigan                      JULIAN ABELE COOK, JR.
                                              United States District Court Judge

Certificate of Service

I hereby certify that on May 14, 2009, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                              s/ Kay Doaks
                                              Courtroom Deputy Clerk

---

[8] During the hearing on February 6th, Magistrate Judge Pepe indicated a willingness to hold a *Franks* hearing. However, Cooper has failed to make a substantial showing that such a hearing is warranted.