UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                    Case No. 08-20464

AGGREY COOPER,                         Honorable Julian Abele Cook, Jr.

        Defendant.


<u>ORDER</u>

        The Defendant, Aggrey Cooper, has filed a motion to vacate his criminal sentence pursuant to 28 U.S.C. § 2255. The Government opposes his request for relief. For the reasons that have been set forth below, the Court denies his motion.

I.

        On April 8, 2008, officers from the Detroit Police Department executed a search warrant at Cooper's residence. During the search, the police officers recovered, among other things, powder cocaine, crack cocaine, marijuana, eight firearms, a digital scale, and $1,115 in cash. Cooper's wife, who was present at the time of the search, waived her *Miranda* rights and told police officers that (1) her husband had been selling cocaine from their home for three years and (2) he was the owner of the seized weapons. When Cooper subsequently arrived at the home, he (1) waived his *Miranda* rights, (2) acknowledged that he had been selling cocaine from the home for two years, and (3) admitted his ownership of the firearms that were discovered by the officers.

On September 4, 2008, a federal grand jury returned an indictment which charged Cooper with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), (2) possessing with an intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (3) possessing with an intent to distribute a cocaine base, in violation of 21 U.S.C. § 841(a)(1), and (4) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Thereafter, Cooper, through his court-appointed attorney, Nancy McGunn, filed a series of pretrial motions between December 2008 and April 2009, which included his formal requests (1) for the Government to produce its confidential informant; (2) for discovery; (3) to obtain a Rule 17(c) subpoena; (4) to suppress the evidence that had been obtained by the officers during their search of his home on April 8, 2008; and (5) for a *Franks* hearing.[1] All of Cooper's motions were ultimately denied by the Court.

On August 18, 2009, the Court conducted a hearing to determine the merit, if any, of the request by Cooper's counsel who, citing to irreconcilable differences in the existing attorney-client relationship, sought authority to be relieved of her legal and ethical obligations to her client. On August 27th, the Court granted McGunn's motion to withdraw as Cooper's legal representative. Thereafter, he retained the legal services of Robert Slameka, who filed his appearance as the defense counsel in this case on September 22nd. Approximately two months later (November 24th), Cooper, after reaching an agreement with the Government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Rule 11 Agreement"), pled guilty to all four counts of the

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

indictment.[2]

On February 22, 2010, without the knowledge or assistance of his retained counsel, Cooper filed a *pro se* motion to withdraw his guilty plea. At a hearing that had been convened to resolve this motion, the Court denied Cooper's request. Moreover, because of the harsh exchange of words that took place between Cooper and his retained counsel, the Court granted Slameka's oral motion for authority to immediately withdraw from the case. The Court, after having heard statements from Cooper that he was gainfully employed as a bus driver, denied his request for the appointment of a substitute counsel. Cooper was encouraged to seek the services of another attorney who would be willing to represent his interests in connection with his pending sentencing.

However, on March 23rd, the Court conducted a hearing in an effort to (1) ascertain Cooper's financial ability to retain substitute counsel and (2) determine his desire for the appointment of an attorney by the Court. Cooper, upon an inquiry from the Court, strongly expressed his desire to forego the appointment of a lawyer and to represent himself in this criminal matter. For the reasons that were set forth on the record during the hearing, the Court (1) accepted Cooper's waiver of an appointed counsel and (2) authorized him to represent himself in this case.

Notwithstanding his unequivocal desire to serve as his own counsel, the Court - acting in response to the vagaries that were readily apparent in Cooper's responses to a series of questions posed to him during the March 23rd hearing - concluded that (1) he lacked formal legal training and the requisite legal acumen with which to evaluate potential constitutional issues in the criminal

---

[2]This Rule 11 Agreement contemplated a sentencing guideline range of 70 to 87 months plus a consecutive 60-month mandatory sentence for Count IV, for a total range of 130 to 147 months. The Government submitted a sentencing memorandum in which it recommended a sentence of 138 months.

3

proceeding, and (2) was in need of a lawyer to represent his interests prior to, and during, the imposition of a sentence in this matter. At the same time, the Court also determined that Cooper did not have the requisite funds with which to retain an attorney on his own. Thus, the Court appointed a representative from the Federal Defender's Office in Detroit, Michigan to serve as the stand-by counsel for Cooper in this criminal case.

A sentencing hearing was convened on April 8, 2010. The Court calculated a higher guideline range than had been originally contemplated by the parties in their Rule 11 Agreement because it (1) agreed, after reviewing the proposed Presentence Investigation Report, with the Probation Department's inclusion of criminal history that had not been included in the parties' calculation, and (2) found that Cooper, subsequent to the execution of the Rule 11 Agreement, had demonstrated conduct which was inconsistent with a finding that he had accepted responsibility for his crime.[3] Under this modified calculation, the sentencing range became 97 to 121 months plus the mandatory 60-month consecutive sentence, for a total of 157 to 181 months. Thereafter, the Court sentenced Cooper to a period of incarceration of 157 months.

## II.

A federal prisoner who challenges his sentence under 28 U.S.C. § 2255 must establish "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[3]The Rule 11 Agreement specified that, "[i]f the Court finds: a) that defendant's criminal history category is higher than reflected on the attached worksheets, or b) that the offense level should be higher because, after pleading guilty, defendant . . . demonstrated a lack of acceptance of responsibility for his offenses . . . and if any such finding results in a guideline range higher than 130 to 147 months, the higher guideline range becomes the agreed range." (Plea Agreement § 2.B (emphasis omitted)).

4

maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If such a violation is found to exist, a petitioner may ask the court to vacate, set aside, or correct the sentence. *Id.* A petitioner's burden in seeking such relief depends upon the type of error alleged. If he claims a harm due to a constitutional error, the aggrieved party must "establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). On the other hand, if the alleged error is non-constitutional, he must demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (citation and internal quotation marks omitted).

A claim that was not raised at trial or on direct appeal is procedurally defaulted unless the petitioner shows (1) cause which excuses his failure to raise the issues and actual prejudice, or (2) actual innocence. *United States v. Frady*, 456 U.S. 152, 167 (1982). This rule, however, does not apply to claims of ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal action the right to counsel. U.S. Const. Am. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense."). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that a defendant is denied the effective assistance of counsel when his attorney's representation falls below an objective standard of reasonableness. The test for determining ineffective assistance is twofold; namely, whether the "counsel's performance was deficient," and if so, whether the "deficient performance prejudiced

the defense." *Id.* at 687. An attorney's performance is considered to be deficient if it falls below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. A defendant is deemed to have been prejudiced if "there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, to demonstrate prejudice, the defendant must show that, but for counsel's ineffective assistance, he would not have decided to plead guilty, but instead would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

In reviewing such a claim, a court must invoke a "strong presumption" that the conduct of the defendant's counsel falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Thus, the defendant bears a heavy burden of overcoming the presumption that the challenged conduct is the result of sound trial strategy. *Id.* The *Strickland* analysis also extends to claims of ineffective assistance during the sentencing process.

### III.

In the *pro se* filings that are now being considered by the Court,[4] Cooper has raised seven issues for consideration; namely, that (1) his counsel was ineffective for not raising an Ex Post Facto challenge to his conviction under 18 U.S.C. § 922(g); (2) he is actually innocent of possessing a firearm in furtherance of a drug trafficking crime; (3) his counsel was ineffective for not challenging the imposition of mandatory minimum sentences under both the firearm statute, 18

---

[4]Cooper, while proceeding *pro se*, filed several documents in February and March of 2011, including (1) a motion to amend, correct, or vacate the sentence in which he asserted six grounds for relief; (2) a supplement to his motion; and (3) an amended motion in which he asserted an additional ground for relief. Subsequent to these filings, and pursuant to Cooper's request, the Court appointed Sanford A. Schulman to represent his legal interests. On August 4th, Schulman filed a reply brief on Cooper's behalf.

U.S.C. § 924(c), and the drug statute, 21 U.S.C. § 841(b); (4) his counsel was ineffective for not appealing the denial of his motion to suppress; (5) the Court should reduce his sentence pursuant to a retroactive application of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010) ("FSA"); (6) his Fourth Amendment rights were violated because the search warrant was not supported by probable cause; and (7) his counsel was ineffective for not raising a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b).

The Court will address each claim seriatim.

## A.

Cooper first argues that his counsel was ineffective for failing to challenge his conviction under 18 U.S.C. § 922(g) on the basis of the Ex Post Facto clause. *See* U.S. Const. Art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto law shall be passed."). Section 922(g) provides, in relevant part, that "[i]t shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ." Section 921(a)(20) excludes from the category of applicable predicate offenses "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . , unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Finally, "the law of the State of conviction, not federal law, determines the restoration of civil rights as a rule." *Caron v. United States*, 524 U.S. 308, 316 (1998).

"The federal felon-in-possession statute involves a two-part inquiry: (1) if a convicted felon's civil rights have been restored under state law, he shall no longer be considered a felon for purposes of § 922(g), except (2) if, pursuant to the 'unless clause' of § 921(a)(20), the felon

remains prohibited from firearms possession." *United States v. Campbell*, 256 F.3d 381, 393 (6th Cir. 2001), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008). The Sixth Circuit has determined that, under Michigan law, "essentially all of a former felon's civil rights, including the right to vote, hold public office, and sit on a jury, are restored under Michigan law upon the former felon's release from custody." *Id.* at 391 (citing *Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999)). However, "even after a person's civil rights have been restored, Michigan law restricts a convicted person's right to possess firearms for a period of time after the sentence imposed for a particular crime has been served." *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002) (unpublished). Thus, if the individual's right to possess firearms has not been restored under Michigan law, the "unless clause" of § 921(a)(20) is implicated and the prior offense serves as a predicate offense under § 922(g).

Cooper was convicted of a felony in 1990 and released from state custody in 1995. Due to a parole violation, he was returned to prison and ultimately released in 1998. Under the law as it existed at the time of Cooper's conviction, his right to possess firearms would have been restored eight years after the expiration of his term of incarceration - in 2006, two years prior to the events here at issue. *See Campbell*, 256 F.3d at 392-93 (eight-year waiting period in former Mich. Comp. Laws § 28.422(1) begins running when felon is released from prison). However, the Michigan Legislature amended § 28.422 and enacted § 750.244f in 1992. Under the new statute, for all but certain specified felonies, the waiting period is three years after the payment of all fines and the expiration of all periods of incarceration, probation, and parole. § 750.224f(1). However, with regard to the so-called "specified felonies," the Michigan Legislature increased the waiting period to five years and included a requirement that the "person's right to possess, use, transport, sell,

purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to [Mich. Comp. Laws § 28.424]." § 750.224f(2). Section 28.424, in turn, describes the process whereby an individual who had been prohibited from possessing a firearm may submit an application to the concealed weapons licensing board for the restoration of this right.

Cooper's prior felony conviction includes at least one count (namely, the possession of cocaine with the intent to deliver) which is a "specified felony" within the meaning of § 750.224f. *See* Mich. Comp. Laws § 750.224f(6)(ii) (specified felonies include those for which an "element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance"). Cooper does not contend that he ever applied to, or was approved by, the concealed weapons licensing board after his release from prison. Therefore, if § 750.224f(2) applies to him, the restoration of his civil rights upon release from prison expressly excludes the right to possess firearms pursuant to the "unless clause" of 18 U.S.C. § 920(a)(2), and his prior offense constitutes an applicable predicate offense under 18 U.S.C. § 922(g).

However, Cooper contends that the application of § 750.224f to his prior offense is an ex post facto violation because this statute was not enacted until after the underlying conviction had occurred. However, the Sixth Circuit, in two unpublished opinions, has rejected precisely this claim. *See United States v. Haire*, 89 F. App'x 551 (6th Cir. 2004) (unpublished) (conviction under § 922(g) did not violate ex post facto clause when change in state law, which occurred subsequent to defendant's prior conviction and release from prison, permanently prohibited him from possessing firearms because state statute and § 922(g) were enacted prior to relevant offense conduct; namely, possessing a firearm); *Melton*, 40 F. App'x at 45 ("Contrary to [defendant's] contention, the provisions of § 750.224f apply to him because that statute became effective prior

9

to the date on which he completed his sentence for felonious assault. Furthermore, subjecting [him] to the provisions of § 750.224f does not offend the Ex Post Facto Clause.").

Here, as in *Haire*, Cooper's offense conduct in 2008 occurred well after the enactment of § 922(g) and § 750.224f. Furthermore, as in *Melton*, § 750.22f was enacted before Cooper had completed his term of incarceration. Therefore, the application of these two statutes to his 2008 conduct does not present any ex post facto issues. *See United States v. Ballard*, No. 09-35-KSF, 2009 WL 12981020 (E.D. Ky. May 7, 2009) (no ex post facto violation where defendant was convicted 1976, paroled in 1980, and discharged from parole in 1997, and relevant state law prohibiting his possession of firearms was enacted in 1994, because the offense conduct - possession of the firearm - occurred well after the law was enacted); *United States v. Clark*, No. 05-80810, 2006 WL 2033981, at *3 (E.D. Mich. July 18, 2006) ("[T]he 1992 modifications of the Michigan law on felon in possession of a firearm do not create an *Ex Post Facto* violation as to [the defendant] because the state's predominant interest in [Mich. Comp. Laws] § 750.224f was not to punish but to protect the public." (citing *Campbell*, 256 F.3d at 393-94; *People v. Tice*, 558 N.W.2d 245, 246-47 (Mich. Ct. App. 1997)); *United States v. Jones*, No. 1:05-CR-132, 2006 WL 399234, at *4 (E.D. Tenn. Feb. 16, 2006) ("The passage of Tenn. Code Ann. § 39-17-1351(j)(3) does not violate the *Ex Post Facto* clause as to Defendant. The conduct being punished is that of the recent act of possessing a firearm. No right was taken from Defendant by the passage of the concealed carry permit law in Tennessee and Defendant is not being punished for anything he did before February 2004, when the Government alleges Defendant violated federal § 922(g)(1)." (citation omitted)). Counsel was not ineffective for failing to raise this meritless claim.

B.

10

Cooper next argues that his conviction for possessing a firearm in furtherance of a drug trafficking crime should be vacated by the Court because he is actually innocent of the charge. Cooper maintains that there was no evidence that (1) he possessed the identified firearms or (2) any possession of these firearms by him was in furtherance of the suspected drug activity. To establish actual innocence, Cooper must establish that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation and internal quotation marks omitted). In responding to Cooper's claim, the Government "is not limited to the existing record . . . [but may] present any admissible evidence of [his] guilt even if that evidence was not presented during [his] plea colloquy . . . ." *Id.* at 624. Thus, the Court may look "not just at the facts to which [Cooper] admitted when he pled guilty, but also at any other evidence of his guilt that the Government has marshaled." *Waucaush v. United States*, 380 F.3d 251, 255 (6th Cir. 2004). This scope of evidence includes "the undisputed circumstances described in the presentence report." *Vanwinkle v. United States*, 645 F.3d 365, 370 (6th Cir. 2011) (citing *Luster v. United States*, 168 F.3d 913, 915 (6th Cir. 1999)).

Cooper's possession argument appears to be based upon the incorrect assumption that actual possession is required. He submits that, since he was not at the residence when the search uncovered the guns, these weapons could not have been in his possession. However, the possession element can be satisfied by showing that Cooper either actively *or* constructively possessed the seized items. *E.g.*, *United States v. Leary*, 422 F. App'x 502, 509 (6th Cir. 2011). In order to establish the latter, the "[G]overnment must simply prove, using either direct or circumstantial evidence, that the defendant had the ability to exercise knowing dominion and control over the items in question." *Id.* (citation and internal quotation marks omitted). "Dominion and control over

11

the premises where the item is found is acceptable, but where evidence of a defendant's mere presence near the guns is presented, there must also be some other incriminating evidence, coupled with presence, . . . [that] serve[s] to tip the scale in favor of sufficiency." *Id.* (citations and internal quotation marks omitted).

Here, Cooper plainly had "dominion and control" over his residence - the premises where the guns were found. Moreover, he expressly and repeatedly admitted that the guns were owned by him and did not belong to anyone else who lived in the home. During the plea hearing, the Government stated that it could prove this charge by showing at trial that, on April 8, 2008, Cooper "possessed the . . . eight firearms at his residence . . . to protect himself, the narcotics, and the narcotics proceeds from his various drug transactions." (Plea Hr'g Tr. 15:22-16:3). When asked if he disagreed with this statement, Cooper stated, "No, she [making reference to the Assistant United States Attorney] said it right." (*Id.* 16:10-13). When asked if he "accept[ed] her statements as being correct," Cooper answered in the affirmative. (*Id.* 16:14-16). Cooper expressly stated several times during his plea colloquy that he (1) had the firearms at his house, (2) was responsible for the guns being there, and (3) he knew it was illegal for him to possess these items. (*Id.* 16:24-25, 18:23-25, 19:10-20:1, 21:11-14, 24:2-6, 25:6-8, 25:21-26:19, 28:8-11). Similarly, the Rule 11 Plea Agreement - which bears Cooper's signature - states that he "knowingly possessed several firearms . . . at [his] residence on April 8, 2008, namely the eight firearms identified in Counts One and Four of the indictment." (Plea Agreement § C). The Guilty Plea Questionnaire, which also bears Cooper's signature, states, "I, as a previously convicted felon, possessed cocaine [and more than 5 grams] of crack cocaine with the intent to distribute same [and] possessed a gun to further said distribution." (Guilty Plea Questionnaire ¶ 36). Both Cooper and his wife, after having waived their

*Miranda* rights, gave statements to the police that the guns belonged to him. (Gov't's Resp. to Def.'s Mot. to Withdraw Guilty Plea, Exs. A, B). The Court also notes that Cooper has challenged the felon in possession of a firearm charge on the basis of the ex post facto clause - and not because he did not actually possess the seized weapons - which further supports the conclusion by the Court that the possession prong of this charge has been indisputably satisfied.

Cooper is correct that "possession in furtherance" requires something more than mere possession standing alone. This "something more" aspect of the charge has been described as "a specific nexus between the gun and the crime charged," *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001), and "requires the [G]overnment to prove a defendant used the firearm with greater participation in the commission of the crime or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence," *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). The Sixth Circuit has stated that possession of a firearm will be deemed to be in furtherance of a drug crime when the weapon is "strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d at 462 (citation omitted). The requisite "specific nexus" can also be shown if "there is a large amount of drugs or money present, such that the very existence of these items on the premises may be seen to warrant a gun for protection." *United States v. Leary*, 422 F. App'x 502, 512 (6th Cir. 2011). "Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Mackey*, 265 F.3d at 462. The Sixth Circuit has explained that this "list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted

13

antique or an unloaded hunting rifle locked in a cupboard." *Id.*

The evidence in the record clearly demonstrates that Cooper possessed these firearms in furtherance of a drug crime. As noted above, he affirmed the correctness of the Government's statement that it could prove at trial that, on April 8, 2008, Cooper "possessed the . . . eight firearms at his residence . . . to protect himself, the narcotics, and the narcotics proceeds from his various drug transactions." (Plea Hr'g Tr. 15:22-16:3). Moreover, the Plea Agreement states that Cooper "knowingly possessed several firearms in furtherance of his drug trafficking at [his] residence on April 8, 2008, namely the eight firearms specified in Counts One and Four of the indictment. These firearms were accessible to [him] at his residence . . . to protect himself, the narcotics, and the narcotics proceeds." (Plea Agreement § C). Likewise, Cooper affirmed in the Guilty Plea Questionnaire that he possessed the weapons to further the drug distribution. (Guilty Plea Questionnaire ¶ 36).

Finally, the Presentence Investigation Report - the accuracy of which Cooper did not challenge (Sentencing Hr'g Tr. 30:1-8, Mar. 8, 2010) - states that (1) eight firearms; (2) plastic bags containing 114.41 grams of marijuana, 63.29 grams of cocaine, and 37.33 grams of crack cocaine; (3) a digital scale; and (4) $1,115 in United States currency were all found in the same upstairs bedroom of Cooper's residence. (Presentence Investigation Report ¶ 9). This alone would be sufficient to establish the "specific nexus" as stated in *Leary*. *See* 422 F. App'x at 512.[5] Moreover, the factors outlined in *Mackey* also support the determination by the Court that Cooper possessed

---

[5]Even if Cooper's argument that the weapons and drugs were not found in the same room were supported by the evidence, it - standing alone - would not preclude a finding that the weapons were held in furtherance of the drug crime. *See United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004).

14

the weapons "in furtherance" of the drug crime. *See* 265 F.3d at 462. First, his possession of the weapons was illegal. Not only was it was illegal for Cooper to possess any firearms under 18 U.S.C. § 922(g) and Mich. Comp. Laws § 750.224f, but it also appears that, based upon his admission that he bought the weapons on the streets of Detroit (Gov't's Resp. to Def.'s Mot. to Withdraw Guilty Plea, Ex. B), that the weapons were purchased illegally. Second, despite Cooper's claim to the contrary, the evidence suggests that at least one of the weapons was loaded. (Gov't's Resp. to Def.'s Mot. to Vacate Sentence Ex. 1). Third, the number and types of weapons (total of eight, consisting of two pistols, three rifles, and three shotguns) and their location (in the same room as the drugs, scale, and money) clearly suggest that they had been possessed for the purpose of protecting Cooper, the drugs, and money derived therefrom.

Taken together, this evidence clearly distinguishes Cooper's possession of these weapons "from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard," *Mackey*, 265 F.3d at 462, and amply supports his conviction of possession of a firearm in furtherance of a drug crime. Because Cooper has failed to show, "in light of all the evidence, [that] it is more likely than not that no reasonable juror would have convicted him," *Bousley*, 523 U.S. at 623 (citation and internal quotation marks omitted), the Court rejects Cooper's claim of actual innocence to this charge.

In his reply brief, Cooper raises a different claim regarding this charge. Specifically, Cooper argues that the Government has failed to establish that he "used" or "carried" the firearms during or in relation to the drug trafficking crime, as those terms have been interpreted by the Supreme Court and the Sixth Circuit. *See Bailey v. United States*, 516 U.S. 137 (1995); *United States v. Riascos-Suarez*, 73 F.3d 616, 623 (6th Cir. 1996); *United States v. Moore*, 76 F.3d 111 (6th Cir.

15

1996). However, these cases predate the amendment of § 924(c) in 1998, which added "possession of a firearm in furtherance of such a crime" as a distinct offense.[6] *See United States v. Combs*, 369 F.3d 925 (6th Cir. 2004). It was this distinct offense - and not using or carrying a firearm during or in relation to the crime - with which Cooper was charged and to which he ultimately pled guilty. Therefore, this prong of Cooper's argument is without merit.

### C.

Cooper next submits that his counsel was ineffective when he did not challenge the imposition of mandatory minimum sentences under both the firearm statute, 18 U.S.C. § 924(c), and the drug statute, 21 U.S.C. § 841(b). The firearm statute provides, in relevant part, as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. 924(c)(1)(A). In *United States v. Almany*, 598 F.3d 238, 242 (6th Cir. 2010) (citing *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008), the Sixth Circuit adopted the reasoning of the Second Circuit, and held that the "except clause" of this statute "plainly forbade the imposition of the mandatory minimum contained in the firearm statute in conjunction with another greater mandatory minimum sentence."

Assuming, arguendo, that Cooper can raise an ineffective assistance of counsel claim

---

[6]Section 924(c) was amended specifically in response to the interpretation of this statute by the Supreme Court in *Bailey. See, e.g.*, *United States v. Combs*, 369 F.3d 925, 931-32 (6th Cir. 2004).

16

relating to the sentencing proceedings - during which he was exercising his right to proceed as a pro se litigant, notwithstanding the repeated suggestion by the Court that he accept the appointment of counsel - this argument fails for two independently sufficient reasons. First, *Almany* was promptly abrogated by the holding of the Supreme Court in *Abbott v. United States*, 131 S. Ct. 19, 23 (2010), which held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from [it] by virtue of receiving a higher mandatory minimum on a different count of conviction." Rather, the "except clause" of § 924(c) "refers only to other provisions imposing longer mandatory sentences for the conduct § 924(c) proscribes." *United States v. Ham*, 628 F.3d 801, 812 (6th Cir. 2011) (citation and internal quotation marks omitted); *see also United States v. Thomas*, No. 09-3827, 2011 WL 6183514 (6th Cir. Dec. 13, 2011) ("The law is now clear that 18 U.S.C. § 924(c) mandates a consecutive five-year minimum sentence regardless of whether the defendant is subject to a greater mandatory minimum sentence for the underlying drug-trafficking offence."). Thus, this Section only prevents the imposition of multiple consecutive minimum sentences where both or all of the sentences are based upon the possession of a firearm in connection with a predicate crime. There is no such bar when the other mandatory minimum derives from an unrelated crime. *United States v. Adkins*, 429 F. App'x 471 (6th Cir. 2011).

Second, even if *Almany* had been controlling,[7] it would not have helped Cooper because he was not subject to a "greater" mandatory minimum sentence for the drug charge. Count 3 (possession with intent to distribute more than five grams of crack cocaine) carries a mandatory minimum sentence of five years, which is not "greater" than the five-year minimum found in the

---

[7]The Court notes that *Almany* had not been vacated when Cooper was sentenced.

17

firearms statute.[8] Thus, even if this Court adopted *Almany*'s reading of § 924(c), the "except clause" would not have been implicated here.

For these reasons, the failure of Cooper's attorney to raise this argument does not support an ineffective assistance of counsel claim.

D.

The Court will consider both of Cooper's Fourth Amendment-based claims together. He argues that (1) his counsel was ineffective for not appealing the denial of his motion to suppress and (2) his Fourth Amendment rights were violated because the search warrant was not supported by probable cause.

Because Cooper did not raise the latter claim on direct appeal, he has procedurally defaulted it. Moreover, he has neither shown good cause nor demonstrated any meaningful prejudice that will justify his default. Although Cooper contends that good cause was shown because he was prohibited from pursuing an appeal under the "waiver of appeal" provisions within his Plea

---

[8]Moreover, his ninety-seven month sentence for Counts 1-3 - and, as it turns out, his Guideline range would have been the same (offense level 28 and criminal history III) for Count 3 alone as it was for the grouped Counts 1-3 - was based upon the Guidelines and exceeded the sixty-month mandatory minimum for Count 3. Thus, arguably, Cooper was not subjected to two consecutive mandatory minimum sentences at all. *Almany* recognized this distinction when it distinguished two prior Sixth Circuit cases, *United States v. Baldwin*, 41 F. App'x 713 (6th Cir. 2002) and *United States v. Jolivette*, 257 F.3d 581 (6th Cir. 2001), on the basis that the defendants were not subject to two mandatory minimum sentences when they were sentenced to Guidelines-based sentences plus consecutive five-year sentences under § 924(c). Noting that "a guidelines sentence is obviously not the same as a mandatory minimum sentence," the court stated that, in those circumstances, "neither of the defendants were subject to two mandatory minimum sentences." *Almany*, 598 F.3d at 241. However, unlike § 921(a), the statutes for which the Guidelines-based sentences were imposed in *Baldwin* and *Jolivette* did not contain any mandatory minimum provision. In light of the other bases for this ruling, the Court need not resolve whether a court would violate *Almany*'s command by sentencing a defendant to a Guidelines-based sentence for a non-§ 924(c) offense that is higher than the mandatory minimum for that offense followed by a consecutive § 924(c) sentence.

18

Agreement, such a clause does not constitute a legitimate basis under the circumstances of this case. *E.g.*, *Bryant v. United States*, No. 2:06-CV-210, 2007 WL 4376099, at *5 (E.D. Tenn. Dec. 13, 2007) (waiver of right to appeal does not constitute just cause excusing default nor could such waiver be attributed to counsel - ineffective or otherwise - where it was defendant, not counsel, who personally waived that right in writing and during statements made in plea colloquy); *Owens v. United States*, No. 4:06-cv-123, 2007 WL 1041121, at *6 (W.D. Mich. Apr. 4, 2007) ("[W]here a criminal defendant's failure to appeal is based upon his knowing and voluntary abandonment of the right to appeal, he cannot possibly show cause."). Because this claim has been defaulted, and cause has not been shown, Cooper is precluded from raising it in this § 2255 motion.[9]

Cooper fares no better in the alternative formulation of his Fourth Amendment argument - to wit, that his counsel was ineffective for failing to appeal the denial of his suppression motion and/or advise him of his right to appeal that denial. In his reply brief, he suggests that counsel was ineffective for failing to advise him to reserve the right to appeal by entering into a conditional guilty plea specifically reserving that right. *See* Fed. R. Crim. P. 11(a)(2) ("With the consent of the

---

[9]The Court also notes that this Fourth Amendment claim may not be cognizable on collateral review in any case. In *Stone v. Powell*, 428 U.S. 465 , 494 (1976), the Supreme Court held that Fourth Amendment claims were not cognizable in § 2254 actions where the defendant had a full and fair opportunity to litigate the issue in the state court. Subsequently, in *United States v. Johnson*, 457 U.S. 537, 563 (1982), the Court appeared to suggest that this rule also applies in § 2255 actions challenging a federal conviction. *E.g.*, *Boone v. United States*, 100 F.3d 956 (6th Cir. 1996) (unpublished table decision) (citing *Stone* for the proposition that defendant's Fourth Amendment claim was not cognizable in a § 2255 action); *United States v. Chapman*, No. No. 06-CV-11127, 2006 WL 2160967, at *1 (E.D. Mich. July 31, 2006) (same); *see also, e.g.*, *Hunt v. United States*, No. No. 2:09-cv-419, 2010 WL 3703205, at *5 (S.D. Ohio Sept. 17, 2010) (same, and citing cases from other circuits). Here, Cooper had a full and fair opportunity to litigate his Fourth Amendment claim - and, in fact, this claim was fully litigated. His counsel filed motions to suppress the evidence and for a *Franks* hearing, both of which were denied.

19

court and the [G]overnment, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.").

The Government contends - and Cooper does not dispute - that it could have filed a Previous Conviction Information pursuant to 21 U.S.C. § 851, which would have subjected him to defend against a ten-year mandatory minimum for the crack offense under § 841 as opposed to the five-year minimum that was contemplated by the Guilty Plea Agreement. The Government correctly argues that Cooper's counsel was not unreasonable for counseling his client to enter a guilty plea - thereby waiving his right to appeal the denial of the suppression motion - rather than to risk going to trial and facing a mandatory minimum of fifteen years (ten years for the crack offense and five years for the weapons offense under § 924(c)). *See Strickland*, 466 U.S. at 689 (defendant must overcome strong presumption that counsel's conduct was outside the wide range of reasonable professional assistance and was not the result of sound strategy). This conclusion is bolstered by the fact that - for the reasons that were outlined in (1) the magistrate judge's recommendation that the Court deny the first suppression motion; (2) the adoption of this recommendation by the Court over Cooper's objections; (3) the denial of Cooper's subsequent motion to suppress the evidence; and (4) the rejection of Cooper's application for a *Franks* hearing - the underlying claim was a weak one. Thus, Cooper has failed to successfully advance either prong of *Strickland*. *See, e.g.*, *Worthington v. United States*, 726 F.3d 1089, 1093-94 (Contie, J., concurring) (where suppression motion would likely fail, "counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the warrant").

With respect to Cooper's claim that his counsel was ineffective when he failed to negotiate

the entry of a conditional guilty plea, it suffices to note that such a plea requires the consent of the Court and the Government. Fed. R. Crim. P. 11(a)(2); *Simmons v. United States*, No. 01-80527, 2010 WL 4973730, at *2 (E.D. Mich. Dec. 1, 2010). Cooper has neither alleged nor shown that such consent would have been granted. *See Stamper v. United States*, Nos. 1:05-cv-317, 1:03-cr-86, 2008 WL 2811902, at *10 (E.D. Tenn. July 18, 2008) (rejecting identical claim where there was no allegation or evidence that the Government offered or would have assented to conditional plea). Furthermore, Cooper does not allege that he would have rejected an unconditional plea if he had known of the possibility of entering a conditional plea, as required to show prejudice under *Strickland*, 466 U.S. 668, and *Hill*, 474 U.S. at 58-59. Finally, as noted above, Cooper has not demonstrated - and cannot demonstrate - that he would have been likely to prevail on the Fourth Amendment claim on appeal. For all of these reasons, Cooper's fourth and sixth claims must be rejected.

E.

Cooper next argues that the Court should reduce his sentence pursuant to a retroactive application of the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). The FSA, in relevant part, amended the sentencing provision that is applicable to the criminal offense to which Cooper pled guilty (namely, 21 U.S.C. § 841(b)(1)(B)(iii)) by increasing from 5 grams to 28 grams the amount of crack cocaine that is necessary to trigger a five-year mandatory minimum sentence of incarceration.

To the extent that Cooper seeks relief from the mandatory minimum sentence imposed under the pre-FSA law, this argument fails for several reasons. First, because Cooper was held accountable for possessing 37 grams of crack cocaine, he would be subject to the five-year

21

minimum sentence under either the pre- FSA or the post-FSA provisions. Second, the Sixth Circuit has held that the provisions of the FSA are not retroactive with respect to those defendants, like Cooper, who were sentenced prior to its enactment. *United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010). Third, his sentence for this count - based on the Guidelines - was well above the mandatory minimum sentence. Thus, even if the new mandatory minimum trigger had been applied in this case, it would have had no effect on his sentence. The Court notes that Cooper may be eligible for a sentencing reduction under Amendments 748 and 750 to the United States Sentencing Guidelines. Amendment 748 - which was enacted in response to the directive in the FSA that the Sentencing Commission promulgate emergency amendments to bring the Guidelines into conformity with the statute, FSA § 8(2) - was a temporary, emergency amendment that included a downward adjustment in the base offense levels for possession of crack cocaine. Amendment 748 was re-promulgated as permanent in April 2011. Amendment 750, which became effective on November 1, 2011, gave Amendment 748 full retroactive effect. The Court, with recognition that Cooper has filed a separate motion which seeks a sentence reduction pursuant to 18 U.S.C. § 3582 based upon these Guideline changes, will resolve the issues raised therein in a separate order.

In his reply brief, Cooper seeks to be resentenced under Amendment 706 to the United States Sentencing Guidelines, which reduced the base offense level applicable to most crack cocaine sentences by two levels. U.S.S.G. app. C, amend. 706 (Nov. 1, 2007). However, Cooper was sentenced after this amendment went into effect and according to the 2009 Sentencing Guidelines. Thus, the guideline calculation that was utilized by the Court had already included this two-level reduction. He is not entitled to any further reduction pursuant to this amendment.

F.

22

Finally, Cooper argues that his counsel was ineffective for failing to seek the dismissal of the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161. This statute provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Cooper contends that, because more than thirty days elapsed between his arrest on April 8, 2008, and the filing of the indictment on September 4, 2008, his counsel was ineffective for failing to seek dismissal on this ground.

For the purposes of this argument, the Court assumes - without deciding - that Cooper was arrested, as defined in the ordinary, constitutional sense of the word, on April 8th.[10] However, it is well-settled that a "defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending, that is, when a formal complaint or charge is issued." *United States v. Salgado*, 250 F.3d 438, 454 (6th Cir. 2001); *see also United States v. Graef*, 31 F.3d 362, 364 (6th Cir. 1994) ("[C]ourts [have] unanimously . . . conclude[d] that the arrest 'trigger' for § 3161(b) applies only to arrests made either on a complaint or which were immediately followed by a complaint."); *United States v. Blackmon*, 874 F.3d 378 (6th Cir. 1989) ("A defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending. An 'arrest' refers to the point at which a defendant is charged with the crime; therefore, a defendant is not

---

[10]After the police officers had executed the search warrant and Cooper returned to his residence, he was handcuffed and read his *Miranda* rights. But these facts - standing alone - do not necessarily establish that he was arrested. *See, e.g.*, *United States v. Williams*, 170 F. App'x 399, 403 n.4 (6th Cir. 2006) (noting that circuit courts have "struggled to find a workable definition of the term 'arrest,'" but concluding that the common thread among these cases is that "they all depend on a fact-specific analysis of the degree of force the officers used on the occasion in question").

'arrested' until a formal complaint or formal charge is issued." (citations omitted)).

Here, inasmuch as no complaint had been filed against Cooper, the thirty-day clock within which to indict him never started. *Graef*, 31 F.3d at 364 ("[B]ecause no complaint was ever filed against [defendant], there could be no 'arrest' for purposes of beginning the 30-day pre-indictment clock."). Therefore, Cooper's counsel was not ineffective for failing to raise this meritless argument.

IV.

For the reasons that have been set forth above, the Court denies Cooper's § 2255 motion in its entirety and without prejudice to his separately-filed § 3582 motion.

When a district judge enters a final order which is adverse to a defendant in a § 2255 action, it must also issue or deny a certificate of appealability. *See* Rule 11 of the Rules Governing Section 2255 Proceedings; *see also* 28 U.S.C. § 2253(c)(1)(B) (prohibiting defendant from appealing final order in § 2255 proceeding unless court issues certificate of appealability); Fed. R. App. P. 22(b) (same). A certificate of appealability may be issued only if the defendant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this burden, the defendant must establish "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus, a petitioner - such as Cooper -must demonstrate that reasonable jurists would find the assessment of the constitutional claims by this Court to be debatable or wrong. *Id.*

In light of the facts of this case, especially when considered against settled and controlling precedent of the Supreme Court and the Court of Appeals for the Sixth Circuit, reasonable jurists

24

would not find the resolution of the constitutional issues that have been raised by Cooper to be

debatable or wrong. Therefore, the Court denies a certificate of appealability to Cooper.


IT IS SO ORDERED.


Date: January 4, 2012                           s/Julian Abele Cook, Jr.
                                                JULIAN ABELE COOK, JR.
                                                U.S. District Court Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 4, 2012.


                                                s/ Kay Doaks
                                                Case Manager